UNITED STATES DISTRICT COURT
SOUTHERN DISTRCT OF FLORIDA

CASE NO. 18-20823-CR-WILLIAMS

UNITED STATES OF AMERICA

vs.

MARK E. FISHER,

    Defendant.
_____/

## GOVERNMENT'S SENTENCING MEMORANDUM

The United States of America respectfully files this sentencing memorandum to address certain issues to be considered by the Court at sentencing of Defendant Mark E. Fisher ("Fisher"). Fisher is charged with using his law license while participating in a stock manipulation scheme involving the shares of a beauty supply company, Valentine Beauty, Inc. ("VLBI"). Fisher engaged in this conduct along with various co-conspirators, including Eddy Ubaldo Marin, who was incarcerated in an unrelated matter during part of the criminal scheme charged here. Fisher also has voluntarily acknowledged having engaged in a significant number of other manipulation schemes, has attempted to cooperate with law enforcement, and has agreed to voluntarily forfeit approximately $8.4 million in illicit proceeds prior to sentencing. In light of the applicable advisory guideline range, and after consideration of the factors set forth in 18 U.S.C. § 3553(a), Fisher should receive a sentence of incarceration that fully accounts for his criminal conduct, on the one hand, while also crediting him with his efforts at cooperation, voluntary forfeiture, and other positive characteristics, on the other.

The facts of the case are set out in the PSI, and Fisher does not present any factual or

guideline calculation challenges. Fisher presents a complicated picture of a former lawyer who, from his earliest period as a practicing lawyer, unfortunately became involved with a cast of unsavory characters including Marin. Fisher appears to have learned the penny stock manipulation business from Marin, and in turn provided Marin with necessary false legal opinion letters and an attorney's escrow account that allowed Marin to carry out certain schemes. For every corrupt stock manipulation deal, the services of a lawyer were necessary to further aspects of the scheme. The VLBI fraud charged in this case was one in a long line of manipulation schemes that Marin would put together using a rotating cast of promoters, straw officers and shareholders, corrupt stock transfer agents, and accountants. Not all of these were profitable and Fisher himself did not reap substantial fraud proceeds until later. Fisher eventually broke off from Marin and engaged in a number of other stock manipulations with different co-conspirators, before leaving the practice of law to focus on real estate and personal matters.

After first being confronted by law enforcement in the investigation of this case in or around June 2018, Fisher initially indicated a willingness to cooperate and to debrief. Once plea discussions were underway, Fisher met with the case agent and assigned prosecutor for a debriefing in July 2018, at which point he was not truthful about the nature and extent of his conduct related to Bitcoin Services, Inc. ("BTSC"). Fisher personally reaped nearly $8 million in proceeds from certain BTSC stock sales. However, in this first debriefing, Fisher falsely claimed to an FBI agent and the undersigned prosecutor, that his receipt of these BTSC stock sales proceeds was legitimate, and based on lawful activities related to BTSC. It had already been discussed among the parties that Fisher would have to forfeit all ill-gotten gains for all illegal activity if there were to be a plea agreement (even if his statements would not be used to prosecute him for these additional fraud

2

schemes). Thus, the effect of these initial false statements would have been to conceal his own involvement in the BTSC fraud and for him to keep nearly $8 million for BTSC shares he sold.

When confronted during a subsequent meeting with his prior false claims about BTSC, Fisher acknowledged that he had not been truthful previously. Fisher stated that part of the reason he was not truthful was because he did not want to be accountable and pay back the BTSC proceeds. Thereafter, from late August 2018 through the last several weeks, Fisher has engaged in various efforts to attempt to cooperate with law enforcement. These efforts have included attempted cooperation with another District, but under the auspices of his plea agreement in this case. These efforts also included providing documents and other information to the FBI. However, it should be noted that Fisher's initial false claims related to BTSC and the nearly $8 million in share sales proceeds, combined with his somewhat non-linear manner of communication, have caused impediments if not complete roadblocks to obtaining useful cooperation from him.

Fisher is continuing to attempt to cooperate but there is no guarantee or even prediction whether these efforts will amount to substantial assistance. The government will not be filing a sentence reduction motion at the time of his sentencing. However, Fisher has made significant inroads, including by admitting to numerous uncharged crimes, and by agreeing to voluntarily forfeit the proceeds of his illegal activity. As of the time of this filing, Fisher has already transmitted $6 million to the United States Marshal's Service and is expected to transmit an additional $2.4 million prior to his sentencing pursuant to the plea agreement. The Court can take these efforts into account, even if it is not pursuant to a motion for reduction of sentence.

Fisher's advisory guideline range is 46 to 57 months. Fisher committed the crime charged in the Information while acting as a licensed Florida attorney and thus it is important that the Court

impose a sentence that will serve as a substantial deterrent to Fisher as well as others. Attorneys are trusted and necessary gatekeepers in the securities industry. For the securities business to function attorneys must be relied upon to help determine whether shares of public companies should be deemed "free trading" or "restricted." An attorney corrupted by greed or otherwise can literally help turn worthless paper into millions of dollars in illicit profits. Here, Fisher's false opinion letters and other conduct allowed Fisher and his co-conspirators to turn what should have been restricted or unsaleable shares into profits by using false statements and deceit. Without a corrupt lawyer, who was admitted to the bar and was willing to author false opinion letters, the VLBI could not have been successful.

Three recent comparable sentences of attorney's charged with securities-related offenses should be noted in the Court's determination:

1) *United States v. David Lubin*, No. 17-CR-20508-COOKE. Lubin was a securities lawyer who wrote false opinion letters and brokered sales of fraudulent shell companies. He personally earned approximately $300,000 from the scheme. Lubin was originally sentenced to 36 months. Lubin cooperated extensively, testified at the trial of a co-defendant, and his sentence was later reduced to a year and a day.
2) *United States v. Andrew Wilson*, No. 17-CR-20883-WILLIAMS. Wilson was a securities lawyer who authored approximately 5 false opinion letters and engaged in corrupt escrow services related to a stock fraud scheme. Wilson cooperated and testified at the trial of a co-defendant. He reaped approximately $10,000 from the scheme. He received a § 5K1.1 at sentencing and was sentenced to 7 months home-confinement and 5 years probation.
3) *United States v. James M. Schneider*, No. 17-CR-20712-MORENO. Schneider was a securities lawyer who authored more than 40 fraudulent opinion letters and engaged in fraudulent escrow services, among other things. He reaped about $100,000 from the scheme. He went to trial and was sentenced to 7 years, which was 50% below the guidelines due in part to sentencing disparities with other defendants.

Here, the Court should use the low-end of the applicable guideline range of 46 months as a basis for the sentence. The Court should be mindful that Fisher engaged in this scheme with a well known criminal, Marin, not by accident or mistake. Marin was in fact incarcerated at FCI Miami

4

serving a federal sentence in another case during Fisher's participation in the VLBI scheme.

On the positive side of the ledger, the Court should also be mindful of the significant steps Fisher has taken to pay back ill-gotten gains for VLBI and other criminal schemes. This includes uncharged conduct that Fisher acknowledged during his debriefing, some of which the Government did not know about and could not have independently prosecuted. Fisher's attempts at cooperation should also be encouraged, though he created his own significant hurdle to receiving cooperation credit due to his false and misleading initial account of the nearly $8 million BTSC sales proceeds. The government has informed Fisher's counsel that, despite this initial hurdle, it will still consider cooperation credit in the future, depending on how, or the extent to which, such cooperation may amount to substantial assistance in connection with the prosecution of one or more others. Further, given the significant forfeiture amount in this case, the government is not requesting the imposition of a fine in addition to the forfeiture amounts.

In sum, the PSI sets out an extensive picture of Fisher and his participation in a complex securities fraud scheme. Fisher has made real progress in accepting responsibility and coming to terms with his criminal conduct. His efforts to cooperate could potentially result in a motion to reduce sentence at some future point. However, he committed this significant securities fraud scheme while he was a licensed Florida lawyer, and with an incarcerated co-defendant, among other nefarious characters. A sentence of incarceration that takes into account the entire record in this case would be appropriate. The United States will not oppose a voluntary surrender in the event the Court determines that a sentence of incarceration is warranted.

Dated: May 6, 2019

                                                      Respectfully submitted,

ARIANA FAJARDO ORSHAN
UNITED STATES ATTORNEY
SOUTHERN DISTRICT OF FLORIDA

By:  /s/ Jerrob Duffy
     Assistant United States Attorney
     Court No. A5501106
     99 Northeast 4th Street
     Miami, Florida 33132-2111
     Tel: (305) 961- 9273
     Fax: (305) 530- 6168
     Jerrob.Duffy@usdoj.gov

## **CERTIFICATE OF SERVICE**

I certify that on May 6, 2019, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.

*s/ Jerrob Duffy*
JERROB DUFFY

6